

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00261-CR

Jose B. **ROCHA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR4421
Honorable Christine Del Prado, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: May 14, 2025

AFFIRMED

Jose B. Rocha was found guilty of possessing a deadly weapon in a penal institution (habitual) and was sentenced to twenty-five years of imprisonment. On appeal, Rocha argues that the trial court erred in the punishment hearing by allowing a fingerprint examiner to link him to his prior convictions. We affirm.

At the punishment hearing, the State called Manuel Alvarez, the fingerprint examiner for the Bexar County Sheriff's Office, to testify. Defense counsel objected, arguing that the State had

not shown Alvarez was qualified to testify as a fingerprint expert. The trial court overruled his objection and permitted Alvarez to testify that he had compared Rocha's fingerprints to fingerprints on judgments purported to be those of Rocha. On appeal, Rocha argues the trial court erred in determining that Alvarez was qualified to testify as an expert.

We review the trial court's determination regarding expert qualifications and the admission of expert testimony for abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*

Pursuant to Texas Rule of Evidence 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Before expert testimony can be admitted, the witness must qualify as an expert by reason of his knowledge, skill, experience, training, or education. *See Rhomer*, 569 S.W.3d at 669. "The specialized knowledge that qualifies a witness to offer an expert opinion may be derived from specialized education, practical experience, a study of technical works or a combination of these things." *Id.* "A witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background 'goes to the very matter on which [the witness] is to give an opinion.'" *Id.* (quoting *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)). "'Fit' is a component of qualification, and 'the expert's background must be tailored to the specific area of expertise in which the expert desires to testify.'" *Id.* (quoting *Vela*, 209 S.W.3d at 133). The party offering expert testimony has the burden to show the witness is qualified on the matter in question. *Id.*

"Appellate courts may consider several criteria in assessing whether a trial court has clearly abused its discretion in ruling on an expert's qualifications," including whether the field of expertise is complex, whether the expert's opinion is conclusive, and whether the area of expertise is central to the resolution of the lawsuit. *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006). "The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify." *Id*. "If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Id*. "Greater qualifications are required for more complex fields of expertise and for more conclusive and dispositive opinions." *Rhomer*, 569 S.W.3d at 670.

First, we note that "fingerprint-comparison testimony is admissible under [Rule 702] because it is reliable and it assists the trier of fact in its task of determining whether a latent fingerprint is that of a particular person." *Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005). However, the field of expertise of latent fingerprint analysis is not scientifically complex. *See Rodgers*, 205 S.W.3d at 528 ("For example, DNA profiling is scientifically complex; latent-print comparison (whether of fingerprints, tires, or shoes) is not."). Because the field of fingerprint analysis is not scientifically complex, a trial court does not abuse its discretion for accepting an expert witness whose qualifications are less stringent than those in scientifically complex fields. *See Rhomer*, 569 S.W.3d at 670; *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010).

Second, we note that the substance of Alvarez's testimony was limited to his area of expertise as a fingerprint examiner. *See Rhomer*, 569 S.W.3d at 669 ("'Fit' is a component of qualification."). Alvarez testified that he is a fingerprint examiner with the Bexar County Sheriff's Office. Alvarez testified that to become a fingerprint examiner, one must attend a specialized class,

pass that class, and then become certified. Alvarez testified that he was certified as a fingerprint examiner. He explained that fingerprints are unique, and no two people have the same fingerprint. He further explained that a latent print is usually taken at a crime scene and consists of unknown fingerprints. Latent fingerprints are lifted with powder and tape to get an impression of the fingerprint, which is then processed in the lab. An ink print, on the other hand, is a known print. Alvarez testified that an ink print is usually taken by the booking officer. As part of his duties, Alvarez compares two different fingerprints, usually the one from a person who has been arrested and another fingerprint that is on file with the sheriff's office. Alvarez testified that he had testified in Bexar County on many occasions as a fingerprint examiner.

Alvarez testified that he took the fingerprints of Rocha by grabbing his hands and rolling his fingers over ink and then onto the print card. Alvarez compared the fingerprints he took from Rocha to a certified judgment in Cause No. 2012CR5259, in Bexar County, for Jose B. Rocha with the offense date of June 9, 2012. Alvarez also compared the fingerprints he took from Rocha to another certified judgment in Cause No. 95CR083 for Jose B. Rocha with a sentence of ten years' imprisonment for aggravated robbery with a deadly weapon. Alvarez testified that the fingerprints he took from Rocha matched the fingerprints on the certified judgments for Cause No. 2012CR5259 and Cause No. 95CR083. Thus, Alvarez's testimony was limited to that of his expertise as a fingerprint examiner.

Third, Alvarez did not testify as to the conclusiveness of his expert opinion. He merely testified that the fingerprints matched those on the prior judgments. This case does not involve, for example, DNA testimony that "a given profile occurred one time in 2.578 sextillion (2.578 followed by 21 zeroes), a number larger than the number of known stars in the universe," which

would "require[] a much higher degree of scientific expertise" than testimony that is less conclusive. *Rodgers*, 205 S.W.3d at 528.

Finally, while Alvarez's testimony was central to Rocha's range of punishment being enhanced, under this record, we cannot conclude that the trial court abused its discretion in determining that Alvarez was qualified to testify as a fingerprint examiner. *See Acevedo v. State*, 255 S.W.3d 162, 171-72 (Tex. App.—San Antonio 2008, pet. ref'd) (holding trial court did not abuse its discretion in determining witness was qualified to testify as fingerprint expert). We therefore affirm the judgment of the trial court.

Adrian A. Spears II, Justice

DO NOT PUBLISH